UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL PRESTON,<br>                    Plaintiff,<br>-against-<br>ABSECON MILLS, INC.,<br>                    Defendant. | 12 CV 1393 (ALC)(JLC)<br><br>DECLARATION OF GAILY VON SCHLICHTING PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF ABSECON'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

      I, Gaily Von Schlichting, declare that I have personal knowledge of the following facts and that they are true and correct:

      1.    I am the current Director of Communications of the Defendant, Absecon Mills, Inc. (hereinafter, "Absecon" or "the company"). I have been involved in practically all communications between Absecon and Daniel Preston (hereinafter, "Preston"). I make this declaration in opposition to Plaintiff Daniel Preston's motion for a temporary restraining order and preliminary injunction.

      2.    I am not aware of any communication from Preston where he disclosed in any cognizable way the "Licensed Technology" under the terms of the August 19, 2010 exclusive license agreement between Preston and Randolph Taylor ("Taylor") on behalf of Absecon.

      3.    Absecon manufactured fabric with a significantly-reduced back face deformation before Preston ever was introduced to Taylor by Christian Wiesnand of American Liba, Inc. ("American Liba"). Absecon actually received Congressional funding based on Taylor's white paper proposal for light weight antiballistic fabrics and set up meetings with the Office of Naval Research ("ONR"). These meetings were scheduled without any assistance from Preston.

      4.    I worked extensively on Absecon's proposal to the ONR and found Preston to be of little help when it came to providing information which I and others needed for the company's

1

proposal to ONR. Preston did not prepare "all of the substantive slides used in the presentation to ONR." Preston arguably provided five total slides speaking to the substance of ONR's deliverables – the remainder of his slides were primarily about his own background and seemed somewhat self-promoting. Preston never "prepared" the Statement of Work for Absecon's proposal to ONR. My colleague, Carol Miller, a contract consultant for Absecon, and I drafted and provided the Statement of Work for ONR. Preston also never facilitated Absecon's funding, since Absecon had already received congressional funding prior to ever enlisting Preston's assistance on the ONR presentation. Further, Taylor and William Spano ("Spano"), through prior relationships with American Liba, Inc. ("American Liba") were independently capable of purchasing the fabric manufacturing device developed by American Liba, the "Liba Machine."

    5.    Contrary to Preston Declaration ¶ 13, Preston has never submitted any hours to me for any work he has done on behalf of or for the ONR contract. I asked him several times to submit his contract hours, if any, to me so that I could document this as required by Absecon's contract with ONR. Due to Preston's own failure to provide me hours of his work, he cannot conjure up "hundreds of hours" for work on this project. Preston could not have spent time setting up prototypes when the task of prototype testing belonged solely to Absecon and Preston was rarely present at the Absecon facility. Further, any ballistics testing was conducted by Bill Spano and Dennis Walsh, not Preston. Finally, Preston has yet to ever give a design for the fabric he originally presented to Absecon and, in fact, never produced this sample for Absecon, although he was asked to do so on many occasions. When Preston was actually needed for a crucial presentation for personnel at ONR, he failed to attend. I had informed him of the date for this meeting (December 12, 2011) in October and he said he was due back from the Dominican Republic on the 13th. I told him that would not work, and he assured me that he would change the

dates of his travel and be at the meeting. It was not until the day before the December 12th meeting that I learned he had not done so and would not be at the meeting. The entire meeting (which is known as a "Program Review") was conducted entirely by Absecon employees and consultants. During that meeting, James Mackiewic of the U.S. Naval Health Center, who is the primary advisor on this contract (at the request of Dr. David Shifler of ONR) requested that Absecon present them with a "first cut test matrix" to present data on what we had accomplished thus far. Two days after that meeting, Daniel was sent a photo of Mr. Mackiewicz' preliminary sketch of the matrix and asked to ascertain what test criteria he wished to offer them. He never did so, although this was one of the few times we had asked him to do something to support our project efforts. When asked about it again, he informed Absecon that this was not "required" under our proposal and we should not do anything that was outside the scope of our original proposal. I argued that it was our obligation to provide whatever the program directors in ONR asked for, as we awere advisd at the start of this project that ONR might occasionally direct us to follow their lead as the program progressed. I opened a dialog, via email between Mr. Mackiewizc and Daniel Preston, hoping that might spur Preston to complete the requested test matrix. Preston acted as if he had no idea what they had asked for and was unaware of the request for the matrix. Although I pointed out to him that he had been informed of this task two days after our December 12th meeting, he still did not respond with the requested matrix. So much time had passed by this point, that Absecon employees and ballistics experts, once again, stepped in and completed the matrix for Mr. Mackiewicz and the rest of the ONR staff involved in this program. Since being enlisted as Principal Investigator for Absecon's ONR Contract, Daniel provided very little input and offered very little assistance in contract matters.

6.     Preston's complaint that Absecon had not begun implementing the Liba Machine while it awaited funding from ONR is completely untrue. Funding from ONR was approved in mid-March 2011. On April 3, 2011, Absecon had a major fire, responded to by 27 fire companies, which destroyed a large portion of our plant. Absecon could not safely receive or protect the integrity of the machine until the building it was to be housed in was completely reconstructed and prepared. Shortly after the fire, on April 20th, Dr. David Shifler came to Absecon for a pre-scheduled meeting. Daniel attended that meeting and viewed the damage to the facility. He also very clearly heard Dr. Shifler state that he was entirely sympathetic over Absecon's misfortune and would grant us whatever extra time we needed to bring in the machine and get it set up to run. Daniel did not inspect and advise Absecon on the Liba Machine when it arrived. When Liba prepared to send the machine to Absecon, we were informed that the creels had to be purchased separately as the machine could not operate without them. We were never told by Daniel, who had given us the distinct inpression that the machine was ready to go. Absecon had to pay an additional $400,000 that was never included in the purchase price. Preston conveniently neglected to mention that fact in his discussions with Randy and me.

7.     An Absecon employee, Dennis Walsh, had worked on the machine and the project in general. Although Preston had little input in what was going on before, once Dennis Walsh was brought on, he became more interested in how the project was developing. He still made no appearances at Absecon to assist with the project, and Walsh was greatly dissapointed that Preston failed to show up for the December 12th meeting at ONR. At this time, Daniel has asked for a leave of absence until this matter is settled, as he feels torn between his employer, Absecon, and his friend (Daniel Preston). Meanwhile, Absecon has its own employees, William Spano

("Spano"), John Von Hess, and Bill Anderson using Absecon's own technology to complete our obligations to the Office of Naval Research.

8. Absecon has not and does not use Preston's Licensed Technology. The Liba Machine is owned by American Liba and the machine is subject to ownership of Absecon at the full payment of the American Liba contract. Preston has no right of assignment in the Liba Machine. Absecon is current on its payments to American LIBA and the purchase contract is, and will remain to be, in full force. At this point, there are unique modifications that have been made to this machine by our own engineers, and this is considered proprietary technology belonging to Absecon.

9. On February 9, 2012, I received an e-mail from Preston to Taylor stating that an amount owed was $480,000 under the License Agreement. I responded to this message to point out that Preston was for no apparent reason overcharging Absecon an extra $180,000 for amounts yet to be paid by Absecon. Prior to this date, Absecon had regularly made wire transfers for less than the full amount due under the License Agreement, with no objections from Preston for more than a year. Once Preston alleged the License Agreement was breached, he started contacting personnel at ONR and American Liba, trying to call attention to his termination of the license agreement with Absecon.

10. Preston has not delivered any "Licensed Technology" to Absecon that Absecon did not already have developed in-house or that Absecon had known was in the public domain. We are not currently using anything that isn't already in the public domain or that hasn't already been done or contemplated by Absecon itself.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 8, 2012 in Cologne, New Jersey

*Gaily Von Schlicthing*

Gaily Von Schlicthing