UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DANIEL PRESTON,                                  :    12 CV 1393 (ALC)(JLC)

                Plaintiff,            :    REPLY DECLARATION OF
-against-                                             DANIEL PRESTON IN SUPPORT
                                       :    OF PRELIMINARY INJUNCTION

ABSECON MILLS, INC.,
                                       :
                Defendant.
-----------------------------------------------------------------x

       Pursuant to 28 U.S.C. § 1746, Daniel Preston declares that the following facts are true and correct, subject to the laws against perjury of the United States of America:

       1.    I am the plaintiff in this action and submit this reply declaration in further support of my application for a preliminary injunction. Although Absecon[1] has made a number of assertions – some irrelevant, others scurrilous, and many based on rank hearsay[2] –the arguments it makes in its opposition papers boil down to three things: 1) I did not provide the Technology; 2) Absecon is not using the Technology or, if it is, it has a right to do so because the Technology is not unique; and 3) I did not do what was required of me under the License Agreement. Had Absecon actually believed that any of these things were true, I would have expected it to have terminated the License Agreement or at the very least complained during the nearly 18-month period while the License Agreement was in effect. It did not. Instead, it paid me – albeit slowly

---

[1]     Defined terms have the same meaning in this reply as in my declaration dated March 2, 2012.

[2]     Absecon's papers are rife with misstatements and half-truths. My failure to refute every one of them does not mean I agree; I have simply attempted to focus on the key points and have not tried to be sidetracked by other assertions, no matter how personally disturbing I may find them. Typical of these misstatements is Absecon's claim that I admitted the Liba Machine was not mine. I said nothing of the sort. But, even if I had, the statement would have no significance. I did not purchase the Liba Machine. It was, however, custom-built to my specifications.

– and repeatedly urged me to keep the License Agreement in effect. (Ex. F to my prior declaration; Ex. C to Declaration of Randolph Taylor, "Taylor Decl.")

2. I was the party who terminated the License Agreement when Absecon's breach became intolerable. Even though Absecon makes all sorts of assertions in its opposition papers, it never denies that it breached the License Agreement.

3. Since Absecon's breach of the License Agreement is undisputed, there is no question that I had a right to terminate the License Agreement. It was only after I terminated that Absecon for the very first time questioned my performance or the Technology. Indeed, as recently as February 3, 2012, Taylor sent me an e-mail, a copy of which is annexed hereto as Exhibit K, acknowledging my contributions to Absecon. The e-mail stated:

> You have attended meetings, come down to the mill and spent time on working on this ONR contract. As the Principal Investigator, I would like to pay you at least some of what you are asking for out of the contract, which is perfectly legitimate.

4. Nor did Taylor question Absecon's need for my Technology on February 8, 2012 after I sent him an e-mail (Ex. C to Taylor Decl.) stating that he had been unresponsive for weeks, that Absecon had been in default of the License Agreement from the very beginning, and that, if Absecon did not pay me in full, I would terminate the License Agreement. Taylor's response was that he didn't "understand [my] motivation to shut down this contract which is about to deliver a major break thru for our Soldiers," and he asked "is money so important to [me] that [I] do not want to succeed in seeing this textile breakthrough delivered?" (Taylor Decl. Ex. C.) If my Technology played no role in this breakthrough – as Absecon now claims – and Absecon had its own technology which made mine superfluous, why would Taylor have thought the termination of the License Agreement would prevent the breakthrough from occurring?

5.  Absecon's willingness to distort the facts to suit its purposes is apparent from its repeated references to Section 11 of the License Agreement. (Taylor Decl. ¶ 34.) In purporting to quote Section 11, Absecon omits the following language which limited the amount of time I had to devote to assisting Absecon: "Subject to Licensor's other time commitments." Then, based entirely on this truncated and misleading "quotation," Absecon proceeds to fault me for failing to devote sufficient time to assisting it. By itself, the fact that Absecon neglected to quote Section 11 of the License Agreement in full is troubling. But it is even more disturbing since, as noted above, Taylor had praised me last month for having "attended meetings, come down to the mill and spent time on working on this ONR contract." (Ex. K.) And, if I had nothing to offer, why is Absecon now complaining about my failure to perform.

6.  Absecon's suggestions that it did not know what my Technology consisted of is baseless. I described elements of the Technology to Taylor in detail on more than one occasion. I also provided confidential presentations and technical slides and displayed samples. In addition, I taught the Technology to Absecon's deputy product manager, Dennis Walsh, and parts of the Technology to other Absecon employees, which resulted in the implementation of the Technology and the production and ballistics testing of preliminary fabric samples. Taylor understood – or should have – that a number of things made the Technology distinct, including the way the fibers were layered and fused using the custom-designed Liba Machine.[3] It was precisely because Taylor recognized that the Technology was unlike anything Absecon had done that he agreed to pay me a royalty.

---

[3]  All of the unique features are not being enumerated here because of the public nature of this filing.

7.      The notion that I somehow acquiesced in Absecon's failure to make timely royalty payments is also contradicted by documentary evidence. I have already shown that I notified Absecon that it was in default of its payment obligations a year ago. (Ex. D to my prior declaration.) I complained again on September 27, 2011, telling Taylor that I was "considering calling it quits with you and calling in the marker in full." (See e-mail dated September 27, 2011, a copy of which is annexed hereto as Exhibit L.) While I may have refrained from terminating the License Agreement prior to February 16, 2012, at no point did I agree to Absecon's deviation from the payment schedule set forth in the License Agreement.

8.      The consequences of Absecon's breach of the License Agreement are undisputed. Under Section 12, I have the right to purchase from Absecon, at a purchase price equal to Absecon's cost less tax depreciation, the Liba Machine, as defined in Section 10 of the License Agreement. Absecon implies that it cannot sell the Liba Machine to me because it does not own the Machine. But Absecon's agreement with American Liba allows Absecon to sell the machine with American Liba's written consent. (See Ex. C to my prior declaration, p. 3 ¶ 5.) American Liba has given its written consent. (A copy of a letter from American Liba, dated March 8, 2012, consenting to the sale is annexed hereto as Exhibit M.)

9.      If I am unable to exercise my right to purchase the Liba Machine, I will be irreparably harmed. In its opposition papers, Absecon pretends that the only form of injury I would face if an injunction were not granted relates to my reputation. That is not true. In addition to damage to my goodwill, I risk the loss of the ability to exploit my own Technology.[4]

---

[4]     Notwithstanding Absecon's claim that it has security measures in place, I continue to be concerned that my Technology is not safe. I have been advised that the Technology has been shown to many people who were not required to sign Confidentiality

- 4 -

While Absecon says that I do not need the Liba Machine to use my Technology (Absecon Mem. p 17), it is mistaken. The Liba Machine was the result of a lengthy collaboration between American Liba and me, and was built to my specifications. As Christian Wienands, the President of American Liba, states in his declaration, the Liba Machine is the only one of its kind in the world. If I am unable to exercise my right to purchase the Liba Machine, I will be unable to use my own Technology and will lose the opportunity to develop the market for it. That loss cannot be quantified.

10. If Absecon thinks other machines are available and can be used to make antiballistic fabric, then Absecon should acquire another machine – and use it without my Technology. It should not be allowed to renege on its agreement to let me buy the specialized Liba Machine upon termination of the License Agreement.

11. As for Absecon's pleas of harm, they ring hollow. Ballistics is only a small part of Absecon's business. It is not, in Taylor's words, Absecon's "core business." (See e-mail dated September 28, 2011, a copy of which is annexed hereto as Exhibit N.) Thus, requiring Absecon to sell me the Libra Machine would have little impact on Absecon's business as a whole. Furthermore, Absecon could have easily avoided any harm by simply paying me what it agreed to pay me under the License Agreement.

12. On the other hand, denying this relief would cause me harm that cannot be compensated in money damages. Absecon has already tied up my Technology since August 2010 without paying me what I am due under the License Agreement. By arguing that I can wait until another machine can someday be built, it should not be permitted to gain a further unfair

---

Agreements. For my part, the "secret visitors" I brought to Absecon had government clearance. Furthermore, before arranging the visit, I sought and obtained Taylor's consent.

competitive advantage over me by depriving me of the Liba Machine that I bargained for – and that the License Agreement gives me the right to purchase.

13.  In order to prevent irreparable harm to me, Absecon should be preliminarily enjoined from using the Technology and should be required to let me buy the Liba Machine.

Dated: New York, NY
       March 9, 2012

_____
DANIEL PRESTON

# EXHIBIT K

| | |
|---|---|
| From: | Randolph Taylor <rtaylor@absecon.com> |
| Sent: | Friday, February 03, 2012 4:18 PM |
| To: | Daniel Preston |
| Cc: | Gaily Von Schlichting |
| Subject: | Hours for Contract |

Dear Daniel,

You have attended meetings, come down to the mill and spent time on working on this ONR contract. As the Principal Investigator, I would like to pay you at least some of what you are asking for out of the contract, which is perfectly legitimate. I'm attaching a copy of a hourly sheet that can be duplicated and filled out weekly or monthly. Will you please try to document the hours you have spent with Absecon so I can enter this into the labor portion of the contract?

Thanks and regards,

Randy
—
**Randolph S. Taylor**
President and CEO
Absecon Mills
O Box 672
Cologne NJ 08213

T: 609.965.5373
F: 609.965.0938
C: 609.442.2266

1

# EXHIBIT L

Case 1:12-cv-01393-ALC-JLC   Document 28   Filed 03/09/12   Page 9 of 19

**From:** Daniel Preston <dan@cacaoholdings.com>
**Date:** Tue, 27 Sep 2011 09:52:24 -0700
**To:** dennis.walsh36@yahoo.com<dennis.walsh36@yahoo.com>
**Subject:** Fwd: Catching Up from Absecon

This is what I sent randy.

Sent from my iPhone

Begin forwarded message:

> **From:** Daniel Preston <dan@cacaoholdings.com>
> **Date:** September 26, 2011 8:22:53 PM AST
> **To:** Randolph Taylor <rtaylor@absecon.com>
> **Cc:** Gaily Von Schlichting <gvons@absecon.com>
> **Subject: Re: Catching Up from Absecon**
>
> Randy,
>
> We need to speak asap. Normally it would not be my position to say what I am about to say, but as I am in essence financing you at this point I am going to speak my peace.
>
> I think you are screwing up big time. I brought you the best resource you could possibly hope to find and you are about to loose him and mr or that matter.
>
> The fact that you would go to modern day marine and not bring Dennis is mind blowing.
>
> The fact you ignored me in sending Dennis to Germany is equally upsetting.
>
> The fact that you would send in a progress report without having your technical lead read....
>
> That you and gaily are100% non responsive by phone or email for weeks.

1

You and I need to have a serious talk, I'm considering calling it quits with you and calling in the marker in full.

Regards,

Daniel

Sent from my iPhone

On Sep 26, 2011, at 5:07 PM, "Randolph Taylor" <rtaylor@absecon.com> wrote:

> Dear Dennis,
>
> I am leaving for a dinner with one of our Congressman, but I will give you a call afterwards.
>
> Tomorrow, I will be heading to Modern Day Marine, which I had forgotten about, so the soonest I would be able to see you down here would be Friday, but we can discuss this when I call you later.
>
> As far as the training in Germany with Liba goes, the training will be done here. Gaily has been in close contact with Christian, who has assured her that it is the SAME trainer that will be coming here. He very rarely travels, it's true, but they are making an exception in our case so training can be done on our own machine and at a minimal cost to the government.
>
> I spoke with the product engineer for KDH today. This company, as I think I told you, has done $24 million with the Marine Corps in the last four years in vests. He assured me that there is no binding necessary, so I'm not sure what the binding attachment is all about.
>
> One last thing... can you send a copy of your DD214 to Gaily?
>
> Thanks, Dennis. I'll speak with you later.
>
> Best regards,
>
> Randy
> --
> **Randolph S. Taylor**
> President and CEO
> Absecon Mills
> PO Box 672
> Cologne NJ 08213
>
> T: 609.965.5373
> F: 609.965.0938
> C: 609.442.2266

2

# EXHIBIT M

**AMERICAN LIBA, INCORPORATED**
3017 Highway 153
Piedmont, South Carolina 29673
(864) 269-7063

March 8, 2012

Daniel Preston
160 Coffey Street
Brooklyn, NY

Randolph Taylor
Absecon Mills, Inc.
Aloe & Vienna Avenues
Cologne, NJ

Re:   Purchase Contract and Security Agreement dated June 30, 2011

Dear Mr. Preston and Mr. Taylor:

American Liba, Incorporated ("American Liba") has excellent relations with both Absecon Mills, Inc. ("Absecon") and Daniel Preston ("Preston") and has absolutely no interest in being adverse to either of you.

This concerns the Purchase Contract and Security Agreement, dated June 30, 2011 (the "Liba Agreement"), between American Liba and Absecon, concerning certain machinery and equipment (the "Liba Machine") as more specifically described in the offer dated April 4, 2011 attached to the Liba Agreement.

Under the terms of the Liba Agreement, Absecon agreed to pay American Liba $1,591,823.00 (the "Purchase Price") for the Liba Machine, payable as follows: $397,956.00 payable on signing of the Liba Agreement; $25,000 per month payable for a period of one year commencing one month after the installation of the Liba Machine; and the entire remaining balance of $951,967.00 payable in full on the first anniversary of the date of installation. The Liba Agreement further provides that, following installation of the Liba Machine, interest is included in the unpaid balance of the Purchase Price at the rate of 5.5%.

In addition, Absecon warranted and covenanted in the Liba Agreement that, until the entire Purchase Price is paid, Absecon will not sell or offer to sell or otherwise transfer the Liba Machine or any interest therein without Liba America's written consent, unless arrangements are made, satisfactory to American Liba in its reasonable judgment, whereby any unpaid balance of the Purchase Price is paid simultaneously with any sale or other transfer of the Liba Machine.

American Liba understands that Preston has invoked a right to purchase the Liba Machine from Absecon. American Liba takes no position about whether Preston has such a right. In the event that Absecon is directed by a court to sell the Liba Machine to Preston, and such order is not stayed, or in the event that Absecon agrees to sell the Liba Machine to Preston,

Daniel Preston
Randolph Taylor
March 8, 2012
Page 2

then in either such event American Liba hereby gives its written consent to (a) the purchase by Preston from Absecon of the Liba Machine and (b) Preston's assumption of all of Absecon's obligations under the Liba Agreement, including the obligation to pay the unpaid balance of the Purchase Price to American Liba, in lieu of the payment of the unpaid balance of the Purchase Price simultaneously with the sale of the Liba Machine to Preston. It would also be necessary for Preston to specify the new location of the Liba Machine and to permit the filing of UCC-1 Financing Statement as necessary to continue our security interest in the Liba Machine. Effective upon the sale of the Liba Machine by Absecon to Preston and Preston's assumption of Absecon's obligation to pay the unpaid balance of the Purchase Price to American Liba, American Liba will release Absecon from any obligation to pay the unpaid balance of the Purchase Price.

AMERICAN LIBA, INCORPORATED

By: *[signature]*

Title: President

DM1\3193290.1

# EXHIBIT N

| | |
|---|---|
| From: | Randolph Taylor <rtaylor@absecon.com> |
| Sent: | Wednesday, September 28, 2011 9:50 AM |
| To: | Daniel Preston |
| Cc: | Gaily Von Schlichting |
| Subject: | Re: Answers for You |

Dear Daniel,

Thank you for your email. It certainly provided me with new, or additional, perspective from your side.

I certainly forgot about the Schott opportunity. Thank you for reminding me. Gaily was unaware of this, so didn't realize the issue had more at hand than the instruction phase. It doesn't mean we can't send Dennis to Germany for more intense training, or simply send him to try to close the deal with Schott. I wasn't trying to be penny wise and pound foolish; it just seemed to be a matter of convenience, since Christian was willing to bring the premier instructor here to Absecon.

In reading your reasons for wanting to send Dennis to Germany to train, I need an explanation on how it is that I only have half a machine? What half is missing? Please explain, as this obviously took my by surprise.

When are you planning to return to the States? You are absolutely right in that we need to have an intense conversation as soon as possible, and I would prefer this to be face-to-face, with Dennis if you prefer. He is going to Quantico tomorrow, and will be here at Absecon on Friday. I hope at that time, I will have a better handle on what he has done so far. I have given him all my contact information for Quantico. I will also make sure he gets all the POC information from Gaily. To this point, he had not asked for them. I would like to send him to Natick to get things rolling. Gaily has a fairly good relationship with Dr. Shifler and his staff, and has had some responsiveness from Jim Mackiewicz, but it has been extremely difficult to get the three main contacts to agree on a date. I am glad that Denis will be able to help with that.

I agree we are not always organized or maybe it is just that Gaily and I are spread too thin. I appreciate you taking Dennis' calls and giving him assurances. I never intend to ignore anyone or be unresponsive. Running the core business is also quite time consuming, and so it will be excellent to have someone who can handle all the requirements of the contract. I do appreciate you bringing him my way, and I'm sorry that it may not have seemed so. It was unintentional.

Why do you say our contract a complete disaster? I look forward to having things straightened out, but I'd like to hear your thoughts on how we have fallen so far behind so far.

I'd also like to straighten out the binding attachment issue so we can send our truck to pick up the sewing machines before we fall further behind. You did tell Gaily that Onek knew exactly what we needed, which is why we issued the purchase order to him, although he was not low bidder. He seems to not know what we need. I'm anxious to get that straightened out as well.

We sent the ONR contract to Dennis so he could see the SOW and the details of the proposal. When I spoke with him, he said he couldn't open it. He should have let Gaily know, as you did. I will have a binder with a hard copy for him on Friday.

As far as where we go beyond this contract, this will rely on the information that Dennis is able to get either from Jim Mackiewicz or Dr. Goldwasser at DARPA. Did you share the DARPA concept paper with him? I will have Gaily give him a hard copy on Friday.

1

I am anxious to speak with Dennis on Friday, hear what he has done so far and plan the road ahead.

I look forward to your response, appreciate your input, as always, and am anxious to clarify my own position by your responses to my questions.

Safe travels, fulfilling Rosh Hashanah, and I look forward to speaking with you very soon.

Best regards,

Randy

    **Randolph S. Taylor**
    President & CEO
**Absecon Mills, Inc.**
**PO Box 672**
**Cologne, NJ 08213 USA**
**1-609-965-5373 Office**
    **1-609-442-2266 Mobile**


Anxious to hear what he has done. Not trying to get in the way, Appreciate email further to clarify my position by your response. Look forward to your responses to this email.

On 9/27/11 5:01 PM, "Daniel Preston" <dan@cacaoholdings.com> wrote:

Randy, The reasons to send Dennis to Germany went far beyond the specific instructor. I tried to explain this to you. You basically have 1/2 of the machine I designed. The best way for dennis to understand what is to come is to go to Liba. What he can be trained on at Liba is far more than what he can get from just a few days of a visiting tech at Absecon. Dennis was instrumental in every custom sewing machine designed and produced at my last company. Diverting the arrangements I made with Christian was penny wise and pound foolish. Additionally I had set up meetings for him with a potential large client for you. If you had returned any of the urgent I need to speak to you now messages I would have explained this to you. I will now have to cancel his meetings wit the former VP of Schott.

As to my cell phone not taking voice mail. I am in south america and can't access anyway. If sending a text or responding to an email is too much trouble you can call my office during business hours and I have 14 employees that can track me down for you or transcribe your message. I am not hard to contact. For two weeks I have tried to get you or Gaily on the phone. Both of you are virtually non responsive to emails or messages left with your office or on your cell phones. Dennis has had a similar experience with you for the last two weeks to the point he continued to meet and accept job offers from others. I have fielded more calls from him wondering what is up with Absecon than I cared to receive and he is only still available because I assured him you and Gaily are simply disorganized and this is a big part of why he is being brought in. You can not be successful obtaining and performing on military contracts the way you are going. So far your contract is a complete disaster and you don't even know it. Let us do what we do. I can assure you success if you get Dennis in and don't run any interference.

My simple instructions to Dennis two weeks ago:

-Shake hands with you & get on salary
-Study SOW and meet with me to learn items not detailed in SOW and background tech
-Go to Germany Oct 2nd for week
-Obtain all contact information for government personnel involved in contract and immediately contact the group:

2

introduction with his cv and notification that he is the PM and POC from now on.
-Take point on managing the contract for you
-Take point on setting up performance meetings (he will have much better success on this than you)
 Set up all standards to poise us for success beyond this contact
-Bang out SOW as quickly as possible to accelerate payment and contract success

I feel you have gotten in the way of much of this progressing. I gave you a no risk guarantee on hiring Dennis, I went so far as to accept the financial burden of his salary of you are unhappy with him and fire, and we are now more than 2 weeks past.....Dennis doesn't screw around, he has done a ton of work already, which you don't know about and he is not even on salary. The last person I brought you I had to employ for 6 months and then you lost them. I am not repeating this. If you blow this opportunity I am out, you can settle up, I will then pick up the liba machine and refund your money according to our contract.

-Daniel

**From:** Randolph Taylor <rstceo@comcast.net>
**Date:** Tue, 27 Sep 2011 13:07:50 -0700
**To:** Daniel Preston <dan@cacaoholdings.com>
**Cc:** 'Gaily Von Schlichting' <gvons@absecon.com>
**Subject:** Answers for You


**Dear Daniel,**

**I feel as though you didn't really read a good part of my last email. I did not ignore sending Dennis to Germany. Gaily had a lengthy conversation with Christian, expressing her concerns that if they sent a trainer here, we would not get the "expert" you mentioned that trains only in Germany. Christian (whose integrity Gaily has enormous faith in) assured her that this WOULD be the same "expert" guy. He normally does not travel, but Christian said they are making an exception in our case so that we can train on our own machine and save the government some money. I believe I explained all this in my email last night. Gaily has also just explained this to Dennis on the phone and he agrees it makes sense to train on the machine here, since it is one of a kind.**

**As far as Modern Day Marine goes, I truly, truly believed that we had talked about this. I even remember mentioning that he could take the train to Phila and I would pick him up and we could drive down together. I remember him saying he would "find his way", but Dennis does not recall this. I did speak with him just now though, and he will be going to MDM on Thursday, spending the night and coming to Absecon on Friday.**

**The progress report is simply the one page bi-monthly report that Dr. Shifler asked for. As far as running it by you, Gaily tells me she and Carol called you regarding the first one they ever did and you said you would get more involved when it got to the point of being technical. Since this all dealt with scheduling and installation, Gaily didn't feel it necessary to bother you, but I'm sure she will apologize for offending you. In actuality, she has done this the way she has done it all along... copying everyone, including you, and you never seemed to have a problem with this before. I will make sure she gives her monthly reports to you first from this point on.**

**In all honesty, Daniel, it would be much easier to be responsive if you had a phone that**

3

accepted voice mail messages. Last time Gaily wrote you an email asking about the fact that you had said Onek knew exactly what we needed, you sent her a brief email response saying "Call me". When she tried to call you three times, she was unable to eave a message. Honestly, Daniel, a lack of response from either of us is never unintentional.

I will call you later so we can discuss these things further. If I don't reach you, have a very blessed and fulfilling Roshashana.

Best regards,

Randy

**Randolph S. Taylor**
President & CEO
**Absecon Mills, Inc.**
PO Box 672
Cologne, NJ 08213 USA
1-609-965-5373 Office
1-609-442-2266 Mobile


--
Randolph S. Taylor
President and CEO
  bsecon Mills
PO Box 672
Cologne NJ 08213

T: 609.965.5373
F: 609.965.0938
C: 609.442.2266